Clark C. Coulter, of Detroit, Mich., for defendants.

## ZACK v. NATIONAL LIBERTY INS. CO. OF AMERICA et al.

### No. 1893.

District Court, E. D. Michigan, S. D.

Dec. 12, 1940.

LEDERLE, District Judge.

1. Prior to June 30, 1937, the plaintiff herein, Evelyn Zack, as security for a loan to her father-in-law, Samuel Weisenthal, acquired title to a certain Ford one and a half ton stake body truck, 1935 model, motor number 48-1437858, from her said father-in-law, who was engaged in peddling fruits in the City of Detroit, Michigan. She permitted said Samuel Weisenthal to continue using the truck and authorized him to secure insurance thereon, and a public liability insurance policy covering the truck, issued by the Michigan Mutual Automobile Insurance Company of Traverse City, Michigan, was transferred to plaintiff by Leon Ginsburg, agent for said insurance company. Leon Ginsburg was also agent for the defendant companies.

2. Leon Ginsburg was appointed agent for the defendant companies about 1934, and was authorized to write insurance policies by the State of Michigan at the request of defendant companies. For several years prior to the issuance of the policy in suit he had taken care of insurance on motor vehicles owned by Samuel Weisenthal. Samuel Weisenthal is unable to read the English language.

3. As agent for defendant companies Leon Ginsburg had authority to countersign and issue insurance policies. On or about June 30, 1937, the Michigan Mutual policy was cancelled by the insurer, and Leon Ginsburg was so notified. He, in turn, notified Samuel Weisenthal, and advised him that he, as agent, would write a like policy in another company. In compliance with this offer Leon Ginsburg issued the policy in suit, No. CA 2061085, in the name of the defendant companies, as insurers, based upon information he then had, without asking any questions of plaintiff or her said father-in-law. Said Leon Ginsburg knew that plaintiff wanted the said 1935 Ford one and a half ton stake

body truck of which she held title insured against public liability, fire and theft damages.

4. Through said Leon Ginsburg's error the description of the truck contained in the policy in suit was not correct, the typed description appearing on the face of the policy being of a *1931* Ford 1½ Ton Stake Truck, Motor No. *1547858*.

5. The defendant's agent, Leon Ginsburg, also failed to report that a prior insurance policy on the truck had been cancelled by the Michigan Mutual Company on June 30, 1937, failed to strike out paragraph 9 in the declarations and warranties in the policy to the effect that no prior policy issued to assured had been cancelled, and failed to insert in the space so provided in the policy an exception to declaration and warranty 9 to indicate cancellation of said Michigan Mutual policy, although said Leon Ginsburg had full knowledge of this fact. Actually, the cancellation of the Michigan Mutual policy was the reason for writing the policy in suit, and said Leon Ginsburg so knew. Of this failure, defendants complain herein.

6. In the policy in suit said Leon Ginsburg listed plaintiff's address as 311 Owen Avenue, Detroit, Michigan, her occupation as fruit dealer, and failed to list her husband's occupation or business, of which errors and omissions defendants complain herein.

7. The said Leon Ginsburg did not request any information regarding any lien, mortgage or encumbrance on the truck and failed to note an exception in this regard in the fifth declaration and warranty in the policy, of which defendants complain herein.

8. The policy in suit was written July 6, 1937, six days after cancellation of the Michigan Mutual policy on the truck, based on information supplied by Leon Ginsburg, and he did not make any inquiries or explanation to either plaintiff or her said father-in-law relative to information or terms and conditions to appear in said policy.

9. The policy in suit was delivered to Samuel Weisenthal. Plaintiff did not see it nor read it, and neither plaintiff nor Samuel Weisenthal had any knowledge of the contents of said policy or any declarations or warranties therein or of any mistake, omission or untrue statement therein until after July 28, 1937, when the truck was involved in an accident which caused injuries to Max Burger and Blanche Burger.

10. There was no concealment or fraud or intent to deceive on the part of either plaintiff or Samuel Weisenthal, nor did either of them know prior to said accident that there had been any concealment or error in connection with this policy.

11. The defendant companies made no investigation with reference to this policy or the plaintiff-assured until on or about July 21, 1937, and at that time they learned through their investigator that neither plaintiff nor her employer were located at the address which Leon Ginsburg had specified in the policy, and defendants did not communicate with their agent Ginsburg to get the correct information relative to plaintiff, her status or location, or do anything relative to this discrepancy until after the accident of July 28, 1937.

12. The State Agent for defendant companies testified that if he had known that the Michigan Mutual policy had been cancelled he would have ordered the policy in suit cancelled. He further testified that this was the invariable practice of defendant companies, following a company rule from which no agent, servant or employee of either defendant had a right to deviate.

13. The defendants received compensation for the policy of insurance in suit, although it did not express the real intentions and agreements of the parties, which was to insure the plaintiff, among other things, for damages arising out of automobile accidents involving the truck, such as the accident of July 28, 1937.

14. After the said accident of July 28, 1937, plaintiff complied with the terms of the policy in suit by giving timely notice of the accident to the defendants, their agents, servants and employees.

15. Plaintiff is a citizen and resident of this District, and defendants are foreign insurance corporations. The amount in controversy exceeds three thousand dollars.

### Conclusions of Law

1. This court had jurisdiction of this controversy. 28 U.S.C.A. § 41(1).

2. A court of equity has power to reform a contract of insurance to make it express the undisputed agreement, on the ground of mistake.

"If there has been no fraud and no concealment, but a full and frank statement of all the facts, and the insurer has framed

the papers to suit himself, in view of all the circumstances, the law would justly be subject to the reproach of favoring deception and fraud, if the insurer was allowed to retain the premium, and at the same time repudiate the contract, for his own failure to make its recitals correspond exactly with the facts. North American Fire Ins. Co. v. Throop, 22 Mich. 146, 7 Am.Rep. 638, quoted with approval in Haapa v. Ins. Co., 150 Mich. 467, 114 N.W. 380, 16 L.R.A.,N. S., 1165, 121 Am.St.Rep. 627, and in Patrons' Mut. Fire Ins. Co. v. Perl, 228 Mich. 493, 200 N.W. 286." Quoted from Ovavez v. Mut. Fire Ins. Co., 233 Mich. 305, 311, 206 N.W. 503.

3. The policy in suit was incorrect in certain affirmative statements (a) as to matters on which defendants' agent, Leon Ginsburg, did not have correct information, and about which he requested no information, noted in conclusion 4 as statements to be stricken, and (b) as to matters on which said agent knew at the time of issuing the policy in suit as to correct information, noted for correction in conclusion 4. These statements were incorrect due to the error of defendants' agent, without any fraud or concealment on the part of plaintiff or her father-in-law, and as to such statements plaintiff and defendant companies were mistaken.

4. A judgment shall be entered herein as follows:

(a) Striking from the policy in suit the following:

I. "Address of assured 311 Owen Avenue (No. Street) Detroit (City) Wayne (County) Michigan (State)."

II. Declaration and warranty 1: "Assured's occupation or business is fruit dealer (if married woman, give husband's occupation or business)."

III. Part of declaration and warranty 2: "Employers' name and address 311 Owen Avenue."

IV. Last part of declaration and warranty 5: "and there is no lien, mortgage or other encumbrance thereon except as follows: no exceptions (give particulars)."

(b) Amending the policy in suit as follows:

I. By striking out the description of the automobile appearing in declaration and warranty 2 and substituting therefor: "1935 Ford 1½ Ton Stake Truck, Motor No. 48-1437858."

II. By striking out declaration and warranty 9, reading as follows: "No company has cancelled any automobile policy of the named Assured, or refused to issue automobile insurance to the named Assured during the past three years," and by adding below declaration and warranty 9, under the head of "Any Exceptions to Declarations and Warranties 6, 7, 8 and 9 Are to be Noted Here", the following: "Automobile policy issued to Samuel Weisenthal, as assured therein, and later transferred to Evelyn Zack, assured herein, by the Michigan Mutual Automobile Insurance Company of Traverse City, Michigan, as insurer, through Agent Leon Ginsburg, covering the automobile insured herein, 1935 Ford 1½ Ton Stake Truck, Motor No. 48-1437858, was cancelled by the insurer therein on June 30, 1937."

(c) Containing a general provision that any other term, condition, agreement, exclusion or statement contained in said policy inconsistent with the specific reformations hereby set forth shall be deemed correspondingly reformed.